IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ARVEN MALCOM, JR., | ) | |
| | ) | |
| Plaintiff, | ) | 4:04cv3100 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| CHARLES A. WOOLDRIDGE, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on filing no. 195, the Motion for Summary Judgment filed by the remaining defendants in this case: Charles A. Wooldridge, II, Reg Dallman and Colleen J. White, each in his or her individual capacity only. The plaintiff, Arven Malcom, Jr., a prisoner, brought this action to recover damages from persons who allegedly conspired to deprive him of his constitutional rights in connection with an arrest leading to a conviction for third degree sexual assault, and a subsequent revocation of probation.

Also before the court are filing no. 232, the Notice of Withdrawal of Counsel filed by one of the attorneys for the defendants, and filing no. 234, the plaintiff's Motion to Strike Exhibit 5A referenced in filing no. 200, the defendants' Summary Judgment Index of Evidence. Filing no. 232 is approved. Filing no. 234, on the other hand, requires discussion.

### Exhibit 5A

In filing no. 199, the defendants moved for leave to file Exhibit 5A, a narrative of an investigation of child sexual abuse. The defendants recite in filing nos. 199 and 200 that they offer the exhibit in support of their motion for summary judgment (filing no.195) on the issue of qualified immunity, but, because the document contains confidential material, they will withdraw Exhibit 5A and rely on other affidavits in the record if the plaintiff is allowed

1

access to the document. In filing no. 207, the court granted leave to file the exhibit under seal. In filing nos. 222 and 234, the plaintiff objects and moves to strike the exhibit, and in filing no. 237, the defendants oppose the motion to strike. However, as far as I can determine, the exhibit has never actually been filed. At least, I cannot locate it in the record.

I have now reconsidered the matter, and I decline to rely on evidence to which the plaintiff would not have access. In addition, the defendants have not established that the exhibit constitutes admissible evidence. When reviewing the record in connection with a motion for summary judgment, the court may consider only materials which are usable at trial. See, e.g., Mays v. Rhodes, 255 F.3d 644, 648 (8th Cir. 2001) ("While we review the record in the light most favorable to [the nonmoving party], we do not stretch this favorable presumption so far as to consider as evidence statements found only in inadmissible hearsay."). Upon reconsideration, I grant filing no. 234. Therefore, if the exhibit is in the record, the Clerk of Court shall strike it, and if the exhibit has not been filed, I rescind permission to file it under seal.

**Background**

In May of 1991, the plaintiff was arrested and arraigned on a charge of sexually assaulting Scott Gibson, a minor. The plaintiff contends that during 1990, Charles A. Wooldridge, II, an employee of the Nebraska Center for Children and Youth, induced and coerced Gibson to make false allegations of sexual abuse against the plaintiff, leading to the plaintiff's arrest and conviction in Case No. 91-726 in the County Court of Dawson County, Nebraska. On July 13, 1992, the Dawson County Court entered a judgment against the plaintiff in Case No. 91-726 on a charge of third degree sexual assault of Gibson. The plaintiff received a sentence of two years' probation.

During 1993, a series of proceedings ensued leading to revocation of the plaintiff's probation in Case No. 91-726.  Probation officer Reg Dallman and others participated in the revocation proceedings. On January 10, 1994, the plaintiff received a sentence of 90 days in the County jail upon revocation of his probation.

Almost ten years later, in March--May of 2003, the plaintiff prevailed in postconviction proceedings, resulting in dismissal of Case No. 91-726. (See filing no. 146-3 at 21, Order of March 27, 2003, by the Dawson County District Court setting aside the plaintiff's conviction of July 13, 1992; filing no. 146-3 at 24, Mandate issued March 27, 2003; and filing no. 146-3 at 25, County Court Order of May 5, 2003, dismissing Case no. 91-726 with prejudice.)  The postconviction courts determined that during the plea hearing on July 13, 1992, in Case No. 91-726, the plaintiff had never actually entered a plea, notwithstanding that the trial court believed the plaintiff had pled no contest to the charge of third degree sexual assault.

In the plaintiff's view, although no court vacated the judgment of conviction in Case No. 91-726 until the postconviction action in 2003, the defendants who participated in the efforts during 1991-92 to convict him and during 1993-94 to revoke his probation knew or should have known that the charges against him were unfounded and that the 1992 conviction and sentence were void.  Thus, according to the plaintiff, those persons violated his constitutional rights by their roles in his prosecution, conviction and revocation proceedings.

### Colleen White

Colleen White, the court reporter who is the subject of ¶¶ 84 and 85 of the plaintiff's Amended Complaint (filing no. 14) moves for summary judgment on the ground that she did not violate any of the plaintiff's constitutional or other rights.  The plaintiff accuses

3

White of refusing to provide the plaintiff with a transcript of a hearing, in furtherance of a conspiracy with District Judge Donald E. Rowlands, II, her employer.

In January of 2004, when the plaintiff requested a transcript of a pretrial proceeding held on July 8, 1992, White informed him that the court had not held the proceedings on the record, and that she had no notes for the event because it was the kind of minor hearing which the court often does not report. (See filing no. 200-3, Exhs. 2C-2G.) The plaintiff alleges that the transcript would have demonstrated conspiratorial acts by District Judge Rowlands, acting in concert with others to coerce a plea of no contest from the plaintiff. The plaintiff also alleges that when White "concealed court documents," i.e., failed to produce a transcript of the July 8, 1992 proceeding, she did so in concert with Judge Rowlands in a continuing scheme to hide the truth of the illegal conspiracy beginning in July of 1992.

Subsequently, White found her notes of the hearing which had taken place in a different county, i.e., Lincoln County rather than Dawson County, on July 8, 1992. She then provided the transcript to the plaintiff. (See filing no. 200-3, Affidavit of Colleen White.)

Stripped of the bare, conclusory allegations of conspiracy and improper motive, the only actual conduct alleged by the plaintiff as to Colleen White is that she delayed providing a transcript to the plaintiff for the period she believed she had not reported the hearing on July 8, 1992, until she realized that she had indeed reported it. White denies participation in any sort of conspiracy, and the plaintiff has come forward with no actual evidence to support his allegations of a conspiracy involving her. To establish a prima facie case of conspiracy, a plaintiff must show, among other elements, that the defendant and another person or persons "reached an understanding to violate [his] rights." Rowe

4

v. City of Fort Lauderdale, 279 F.3d 1271, 1282, 1283 (11th Cir. 2002). "The plaintiff does not have to produce a 'smoking gun' to establish the 'understanding' or 'willful participation' required to show a conspiracy ... but must show some evidence of agreement between the defendants .... For a conspiracy claim to survive a motion for summary judgment '[a] mere "scintilla" of evidence ... will not suffice; there must be enough of a showing that the jury could reasonably find for that party.'" Id. at 1283-84. The plaintiff's vague and conclusory allegations of agreement and conspiracy involving White are unsupported by actual *evidence* in the record, only conjecture by the plaintiff as to her motives.

In addition, even if White could be considered negligent by having failed to realize immediately that she had reported the proceedings, the United States Constitution does not protect citizens against the negligence of their public officials. See, e.g., County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998) ("the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process") (citations omitted).

The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. at 323. In response, the opponent must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." Id. at 586. "[T]he mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment as a

5

matter of law .... Instead, 'the dispute must be outcome determinative under prevailing law.'" Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992) (citations omitted). Accord Dico, Inc. v. Amoco Oil Co., 340 F.3d 525, 529 (8th Cir. 2003). "If the evidence is merely colorable ... or is not sufficiently probative ... summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

The court may not weigh the evidence, determine credibility, or decide the truth of any *factual* matter in dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249; Tatum v. City of Berkeley, 408 F.3d 543, 549 (8th Cir. 2005). However, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249. In this case, the record contains no evidence in support of the plaintiff's claim(s) against Colleen White on which to proceed to trial. Summary judgment will be granted in favor of Colleen White dismissing the plaintiff's claims against her.

**Statute of Limitations**

In filing no. 195, Charles A. Wooldridge, II and Reg Dallman move for summary judgment on the basis of the statute of limitations. 42 U.S.C. § 1983 does not contain a statute of limitations, and the United States Supreme Court has ruled that the limitations period for a claim arising under § 1983 is the general statute of limitations applicable to personal injury actions under the law of the state where the claim accrued. Owens v. Okure, 488 U.S. 235, 249-50 (1989); Wilson v. Garcia, 471 U.S. 261, 276 (1985). In Nebraska, that statute is the four-year personal injury statute of limitations contained in Neb. Rev. Stat. § 25-207. Bridgeman v. Nebraska State Pen, 849 F.2d 1076, 1077 (8th Cir. 1988) (*per curiam*).

Just as the applicable state statute of limitations is "borrowed" for § 1983 claims, so

6

are the state's tolling rules. See, e.g., Hardin v. Straub, 490 U.S. 536, 540 (1989); Board of Regents v. Tomanio, 446 U.S. 478, 485-86 (1980). See also Bridgeman v. Nebraska State Pen, 849 F.2d at 1078 ("[t]he use of a state's statute of limitations also requires the use of its tolling statutes and the operation thereof is governed by state law"). Nebraska's tolling statute, Neb. Rev. Stat. § 25-213, tolls the statute of limitations for the period of certain legal disabilities, such as imprisonment. However, the Nebraska courts have interpreted § 25-213 to mean that imprisonment does not by itself toll the limitations period; rather some disability traceable to imprisonment is also required. See, e.g., Gordon v. Connell, 545 N.W.2d 722, 726 (Neb. 1996): "[T]his court has previously held that a showing of a recognizable legal disability, separate from the mere fact of imprisonment, which prevents a person from protecting his or her rights is required to entitle a prisoner to have the statute of limitations tolled during imprisonment."

The plaintiff points to the bar of Heck v. Humphrey, 512 U.S. 477 (1994), as the additional legal disability traceable to his imprisonment which, under Neb. Rev. Stat. § 25-213, tolled the statute of limitations. The rule established by Heck v. Humphrey is that if success on the merits of a civil rights claim would implicate the validity of the plaintiff's conviction or of his continued confinement, the civil rights claim must be preceded by a favorable outcome in a habeas corpus or similar proceeding. Absent a favorable result in a habeas or similar challenge, the plaintiff may not use 42 U.S.C. § 1983 to attack a conviction, even indirectly, if a victory in the § 1983 action could cast doubt on the validity or continued duration of the plaintiff's confinement.

Therefore, the question is whether the principles expressed in Heck v. Humphrey barred the plaintiff from bringing this civil rights action before the dismissal of Case No. Case No. 91-726 on May 5, 2003. (See filing no. 1, Exh. 1, Order of Dismissal by County

7

Court of Dawson County, Nebraska.)[1]

The plaintiff is presently serving a sentence of 10 to 30 years in state custody for a conviction of first degree sexual assault of a minor, Dani V. The facts of that case (Dawson County District Court Case No. 21382) are found in State v. Malcom, 583 N.W.2d 45 (Neb. App. 1998), and State v. Malcom, 675 N.W.2d 728 (Neb. App. 2004). The plaintiff began to serve his sentence in that case on January 7, 1994. Meanwhile, on January 10, 1994, for the revocation of his probation in Case No. 91-726, the plaintiff received a sentence of 90 days imprisonment in the Dawson County Jail *consecutive* to "any other sentence" including "Dawson County District Court Case No. 21382" (see filing no. 1, Exhs. 13, 14, 14(a) and 15). (See also filing no. 152-3 at 43-50, transcript of proceedings on January 10, 1994 before Dawson County Judge Lloyd G. Kaufman.)

Because the plaintiff did not serve his 90-day sentence on revocation of probation before entering state custody in connection with Case No. 21382, the sentence he is presently serving, the plaintiff was never released from custody after fully serving his sentence for Case No. 91-726. Thus, the plaintiff's sentence for the 1992 conviction and related revocation of probation had not been wholly served and had not expired at any time before the dismissal of Case No. 91-726. Accordingly, the plaintiff could not have brought this civil rights case before May of 2003, and the statute of limitations was tolled until then by Neb. Rev. Stat. § 25-213 and Heck v. Humphrey. As a result, the plaintiff's claims against Wooldridge and Dallman are not barred by the statute of limitations.

---

[1]The plaintiff filed this case on March 12, 2004. If Neb. Rev. Stat. § 25-213 combined with Heck v. Humphrey tolled the four-year statute of limitations from 1991-92 (Wooldridge) and 1993-94 (Dallman), when those defendants acted, through at least March 12, 2000, the fourth year before the plaintiff filed suit in this court, the plaintiff's claims in this case were timely.

The foregoing conclusion necessitates further discussion of my summary judgment decision (filing no. 193) regarding Dawson County Deputy Sheriffs Mark Montgomery and Bradley Christner. As it is now clear that the plaintiff's sentences for the 1992 conviction and related revocation of probation were not in fact wholly served and did not expire before the dismissal of Case No. 91-726 in 2003, I again consider the plaintiff's claims against those defendants.

The plaintiff's claims against the Deputy Sheriffs arise out of the following events:

1. On July 9, 1993, Montgomery and Christner reported information to County Attorney Marsh on the basis of which Marsh filed a complaint against the plaintiff of first degree sexual assault.

2. On September 29, 1993, Montgomery and Christner reported information to County Attorney Marsh on the basis of which Marsh filed an Affidavit of Probation Violation against the plaintiff and sought a warrant for the plaintiff's arrest.

3. On October 1, 1993, at approximately 1:00 a.m., the Deputy Sheriffs arrested the plaintiff in his home for violation of probation; they did not have with them the warrant which had previously issued for the plaintiff's arrest, and the warrant did not authorize a nighttime seizure. Also, the plaintiff contends that the deputies lacked probable cause to arrest him because the revocation proceedings were invalid, as his original conviction and sentence of probation for sexual assault were void (although not as yet vacated by a court).

4. On November 15, 1993, the Deputy Sheriffs testified at a probable cause hearing in support of the prosecutor's efforts to revoke the plaintiff's probation.

As for the arrest on October 1, 1993, I again hold that the plaintiff's claims against Montgomery and Christner are barred by the statute of limitations. In Heck, footnote 7 of the majority opinion suggests a type of action which, "even if successful, will *not*

9

demonstrate the invalidity of any outstanding criminal judgment against the plaintiff [and] should be allowed to proceed." Heck v. Humphrey, 512 U.S. at 487 n.7 (emphasis in original):

> For example, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery ... and especially harmless error ... such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful.

512 U.S. at 487 n.7 (emphasis in original, internal citations omitted). See also Hughes v. Lott, 350 F.3d 1157,1160-61 (11th Cir. 2003) (Heck does not generally bar claims of illegal search or arrest because "a successful § 1983 action for Fourth Amendment search and seizure violations does not necessarily imply the invalidity of a conviction"). Accord Whitmore v. Harrington, 204 F.3d 784, 784-85 (8th Cir. 2000) (district court erred in dismissal, based on Heck, of plaintiff's unlawful stop claim; unlawful investigative stop does not necessarily imply the invalidity of later drug convictions); Moore v. Sims, 200 F.3d 1170, 1171-72 (8th Cir. 2000) (*per curiam*) (Heck does not bar § 1983 unlawful arrest claim). In Wallace v. City of Chicago, 440 F.3d 421, 425-28 (7th Cir. 2006), the Seventh Circuit recently explained that only rarely, such when a plaintiff has been convicted for resisting arrest, would accrual of his § 1983 claim for wrongful arrest be deferred by Heck; the norm is that the cause of action accrues at the time of the arrest.

In this case, a § 1983 judgment in favor of the plaintiff regarding the manner in which he was arrested (at night without the warrant in hand) would have created no negative implications regarding the validity of his conviction or sentence for sexual assault of Scott Gibson. Only if the § 1983 Fourth Amendment claim would "negate an element of the offense of which [the plaintiff] has been convicted," Heck v. Humphrey, 512 U.S. at

10

486 n. 6, is accrual of the claim deferred until the conviction or sentence has been invalidated. Therefore, the plaintiff's claims against Montgomery and Christner of unlawful arrest would not have been tolled by Heck v. Humphrey, and the statute of limitations for the claim based on the October 1, 1993 arrest expired by October 1, 1997.

### Witness Immunity

As I stated in filing no. 193, the Deputy Sheriffs are shielded by absolute immunity for their roles as witnesses at the plaintiff's probable cause hearing on November 15, 1993. Similarly, Reg Dallman, in his capacity as a District Nine State Probation Officer assigned to Case No. 91-726, reported probation violations to the court and testified in various hearings.

For informing the court of the plaintiff's prior conviction in Case No. 91-726 and for testifying regarding alleged violations of probation, Dallman, like the Deputy Sheriffs, is protected by the absolute immunity afforded witnesses in judicial proceedings. See, e.g., Briscoe v. LaHue, 460 U.S. 325, 329-34 (1983) (witnesses are protected from suit by absolute immunity). See also Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1282 (11th Cir. 2002): "[A] witness's absolute immunity from liability for testifying forecloses any use of that testimony as evidence of the witness's membership in a conspiracy prior to his taking the stand." Accord Dornheim v. Sholes, 430 F.3d 919, 925 (8th Cir. 2005) (§ 1983 did not abrogate the absolute immunity available at common law to witnesses, even for allegedly perjured testimony, because "officials are entitled to absolute immunity from civil rights suits for the performance of duties which are 'integral parts of the judicial process' as long as the judicial function was granted immunity under common law at the time § 1983 was enacted"), *citing* Briscoe v. LaHue, 460 U.S. at 335.

### Qualified Immunity

11

For their roles in reporting information to County Attorney Marsh on the basis of which Marsh filed charges against the plaintiff, the Deputy Sheriffs have qualified immunity. Similarly, Probation Officer Dallman reported three probation violations by the plaintiff. Montgomery and Christner informed Dallman regarding two of those violations, and the third violation resulted from the plaintiff's conviction of first degree sexual assault, the offense for which the plaintiff is presently serving his sentence of 10 to 30 years in state custody.

In Case No. 91-726, the plaintiff appeared before Dawson County Judge Lloyd G. Kaufman on July 13, 1992, for the avowed purpose of entering a negotiated no contest plea which his attorney asked the court to accept (see filing no. 1, Exh. 5, transcript). The court entered a judgment of conviction of third degree sexual assault,[2] and imposed a sentence of two years' probation under terms and conditions ordered by Judge Kaufman on July 13, 1992, as amended on July 31, 1992 (see filing no. 200-2, Affidavit of Reg Dallman, attached Order, Journal and Order, and Amended Order). Judge Kaufman appointed Dallman as the state probation officer. Among the conditions of his probation, the plaintiff had to participate in a sex offender program, avoid contact with juveniles below the age of 19, absent permission from the probation office, and refrain from unlawful conduct.

A government official, sued for damages in his or her individual capacity pursuant to 42 U.S.C. § 1983, is entitled to qualified immunity unless the plaintiff shows that the

---

[2]Ten years later, the postconviction court determined that the plaintiff had not clearly entered a plea on the record, notwithstanding that the plaintiff signed Judge Kaufman's Journal and Order reciting the plaintiff's plea of no contest and setting forth his conditions of probation and the Amended Order reciting the standard conditions of probation (see filing no. 200-2, Affidavit of Reg Dallman, attached Order, Journal and Order, and Amended Order).

12

official violated a "clearly established" federal statutory or constitutional right of the plaintiff. For a right to be considered "clearly established," the plaintiff must demonstrate that a reasonable person would have known: (a) of the plaintiff's right and (b) that the conduct at issue violated the plaintiff's right. See Anderson v. Creighton, 483 U.S. 635, 639-40 (1987):  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 640. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Id. (citations omitted).

Qualified immunity is the norm. "[The plaintiff's] burden is not easily discharged: 'That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*.'" Foy v. Holston, 94 F.3d 1528, 1532 (11th Cir. 1996) (emphasis in original; citation omitted). "Stated another way, qualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful 'in light of clearly established law and the information [that the defendant] possessed .... The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." ' " Smithson v. Aldrich, 235 F.3d 1058, 1061 (8th Cir. 2000).

Qualified immunity is a question of law to be determined by the court and should ordinarily be decided long before trial. Hunter v. Bryant, 502 U.S. 224, 228 (1991).  Once Judge Kaufman entered his judgment of conviction and orders in Case No. 91-726, Deputy Sheriffs Montgomery and Christner and Probation Officer Dallman had no basis to doubt

13

the validity of the plaintiff's conviction and certainly no authority to deviate from the court's directives regarding the conditions of the plaintiff's probation. Therefore, they are protected by qualified immunity from suit and from the plaintiff's claims for damages based on their conduct in reporting information regarding violations of probation. Dallman also has qualified immunity for enforcing the court-ordered conditions of probation, preparing presentence report(s), and otherwise performing his official duties as a probation officer assigned by the court to the plaintiff's case.

In addition, any challenge to the roles played by the Deputy Sheriffs and Dallman in contributing to the plaintiff's conviction in Case No. 21382 would likely be barred until the plaintiff obtains a favorable outcome in a habeas corpus or similar challenge to that conviction, for which he is presently serving a prison sentence. See Heck v. Humphrey, 512 U.S. 477, 486-87 (1994) (action under 42 U.S.C. § 1983 which would call into question the lawfulness of the plaintiff's confinement is not cognizable until after the judgment has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.").

## Show Cause

The plaintiff has filed a brief (filing no. 233) regarding the statute of limitations and the sufficiency of his claim against Colleen White, and he has prevailed as to the limitations issue. In this Memorandum and Order, I have discussed matters on which the plaintiff is entitled to be heard, and there remain aspects of filing no. 195 which have yet to be addressed. However, the plaintiff has been on notice since at least February 22, 2006, that the defendants seek summary judgment based on immunities from suit.

The defendants filed their Motion for Summary Judgment on February 22, 2006, and

since that time, the plaintiff has filed an interlocutory appeal (filing no. 203), obtained a stay (filing no. 207) and received three extensions of time (filing nos. 221, 224 and 230) to respond to the defendants' summary judgment motion. Thus, the plaintiff has had a considerable period in which to prepare his remaining arguments and materials in opposition to filing no. 195. Accordingly, I will grant the plaintiff twenty (20) days from the date of this Memorandum and Order to show cause why summary judgment should not be granted in favor of: (a) Dawson County Deputy Sheriffs Mark Montgomery and Bradley Christner for the reasons stated in filing no. 193, as amended and supplemented by this Memorandum and Order; (b) State Probation Officer Reg Dallman on the basis of the immunities addressed in this Memorandum and Order; and (c) Charles A. Wooldridge, II.

THEREFORE, IT IS ORDERED:

1. That filing no. 232, the Notice of Withdrawal of Counsel filed by Jennifer M. Tomka, one of the attorneys for the defendants, is approved;

2. That filing no. 234, the plaintiff's Motion to Strike Exhibit 5A referenced in filing no. 200, the defendants' Summary Judgment Index of Evidence, is granted; if the exhibit is in the record, the Clerk of Court shall strike it, and if the exhibit has not been filed, leave to file it under seal is rescinded;

3. That filing no. 195, the Motion for Summary Judgment filed by defendants- Charles A. Wooldridge, II, Reg Dallman and Colleen J. White, is granted in part and taken under advisement in part;

4, That summary judgment is granted insofar as the plaintiff's claims against Colleen White arising under the Constitution and laws of the United States are dismissed with prejudice;

5. That pursuant to 28 U.S.C. § 1367(c)(3), I decline to exercise supplemental

15

jurisdiction over any claims under state law against Colleen White now that the claims over which the court has original jurisdiction have been dismissed; and

6. That the plaintiff shall have twenty (20) days from the date of this Memorandum and Order to show cause why summary judgment should not be granted in favor of: (a) Dawson County Deputy Sheriffs Mark Montgomery and Bradley Christner for the reasons stated in filing no. 193, as amended and supplemented by this Memorandum and Order; (b) State Probation Officer Reg Dallman on the basis of the immunities addressed in this Memorandum and Order; and (c) Charles A. Wooldridge, II.

DATED this 14th day of July, 2006.

BY THE COURT:

s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
Chief District Judge